George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Michael R. Reese (State Bar No. 206773)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Spencer Sheehan (*pro hac vice* to be filed)
*spencer@spencersheehan.com*
**SHEEHAN & ASSOCIATES, P.C.**
60 Cuttermill Road, Suite 409
Great Neck, New York 11021
Telephone: (516) 268-7080
Facsimile: (516) 234-7800

*Counsel for Plaintiff Rivka Steinberg*
*and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIVKA STEINBERG, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>- against -<br><br>ICELANDIC PROVISIONS, INC.,<br><br>Defendant. | No. 3:21-cv-05568<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Rivka Steinberg ("Plaintiff"), by her attorneys, alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge, as follows:

## <u>FACTS COMMON TO ALL CLAIMS FOR RELIEF</u>

1.     Icelandic Provisions, Inc. ("Defendant" or "Icelandic Provisions") markets, manufactures, labels, distributes, and sells the traditional Icelandic dairy product – "skyr" – under the "Icelandic Provisions" brand ("Icelandic Skyr" or "Product").

**I.      HISTORY OF SKYR**

2.      Skyr is a traditional "Icelandic cultured dairy product," with "the consistency of Greek yogurt, but a milder flavor."[1]

3.      The word "skyr" is related to the word "shear" (meaning "to cut"), referring to how the dairy is split into the liquid whey and the thick skyr.

4.      Skyr has a slightly sour dairy flavor, with a hint of residual sweetness.

5.      Vikings originally brought skyr to Iceland from Norway, and it was a critical food to sustain Icelandic settlers living just below the Arctic Circle.

6.      This is because the liquid whey was utilized to preserve meat for six months or longer.

7.      Unlike regular yogurts made with one cup of milk, a cup of skyr requires four cups.

8.      Skyr is essentially fat free (0.6 grams of fat per 100 grams), has approximately one-third less sugar than standard yogurts, and is high in protein without the need for added ingredients.

**II.     CONSUMERS CAN CHOOSE FROM NUMEROUS SKYR PRODUCTS**

9.      As Greek-style yogurt has matured as a category, consumer demand has stabilized and even slightly decreased.

10.     According to Bloomberg Business News, "While U.S. yogurt sales dropped 3.4 percent in the 12 months ended in February, the Icelandic style jumped 24 percent to $173.9 million, Nielsen data show."[2]

11.     According to the CEO of conglomerate General Mills, "Icelandic yogurt, [really] follows the simply-better-for-you trend" because it is "high in protein, [and] low in sugar."

12.     Numerous companies offer their take on skyr, giving consumers, like Plaintiff, many options.

13.     Every company except for Defendant is truthful about the origins of its skyr, describing it as "Icelandic-style," a clear indicator competing products are not made in Iceland.

[1] Wikipedia contributors, "Skyr," Wikipedia, The Free Encyclopedia.
[2] Leslie Patton, In the Yogurt World, the Greeks Are Down and Vikings Are Up, Bloomberg Business News, Apr. 17, 2019.

CLASS ACTION COMPLAINT
*Steinberg v. Icelandic Provisions, Inc.*, No. 3:21-cv-05568

| Competitor Skyr Brands | Descriptions |
|---|---|
|  | Icelandic style skyr |
| | Icelandic Style Yogurt |
|  | Icelandic Style Yogurt |



Icelandic Style Nonfat Yogurt

A Traditional, Icelandic Skyr Made in USA, Inspired by Iceland



Icelandic Style Yogurt




Icelandic Style Yogurt



Icelandic Style Skyr

4



Icelandic Style Yogurt

Icelandic Style Skyr Yogurt

Icelandic Style Yogurt

Icelandic Style Yogurt

CLASS ACTION COMPLAINT
*Steinberg v. Icelandic Provisions, Inc.*, No. 3:21-cv-05568



Icelandic Style Yogourt

Icelandic Style

Icelandic Style Nonfat Yogurt

14. Despite the many companies which market varieties of skyr, consumers, and Plaintiff, purchased Defendant's skyr based on Defendant's representations that it was made in Iceland (which are detailed below).

15. Plaintiff did not think that any of the other competing skyr products were made in Iceland.

16. Defendant is aware of consumer demand for Icelandic skyr *made* in Iceland.

17. Defendant has zealously sought to prevent other companies from marketing traditional Icelandic skyr.

6

18.    In response to a version of skyr that was sold in a British supermarket and manufactured in Denmark, "MS Iceland Dairies, where they really do make real Skyr," the blog "Iceland, Defrosted" stated:

> How about being honest to your consumers in the UK and tell them the truth: this is not an Icelandic skyr that you are selling in the UK. It's a yogurt that is produced in Germany and has nothing to do with the real Icelandic skyr.[3]

19.    MS Iceland Dairies is Defendant's partner in producing the skyr sold to American consumers as "real Icelandic skyr."

20.    Defendant's Product is the market leader for skyr.

21.    Defendant knows that consumers associate its brand with authentic skyr which is believed to be made in Iceland.

22.    Despite the many companies which market varieties of skyr, consumers, and Plaintiff, purchased Icelandic Provisions' skyr based on the representations that it was made in Iceland.

23.    Plaintiff did not think that any of the other (i.e., non-Icelandic Provisions) skyr products were made in Iceland.

24.    Defendant knows that consumers associate its brand with authentic Icelandic skyr which is made in Iceland.

**III.    CONSUMER DEMAND FOR AUTHENTICITY**

25.    Today's consumers are faced with increasing commercialization of products and seek brands that are genuine – whisky from Scotland, Mexican beer from Mexico, and Italian tomatoes from Italy.

26.    For many consumers, authenticity has overtaken quality as the prevailing purchasing criterion.

27.    Consumers often pay a price premium for what they perceive to be authentic products, particularly those perceived to be authentically associated with a specific place, such as

---

[3] Iceland Defrosted Blog, *Beware of the 'Skyr'*, Sept. 24, 2015.

CLASS ACTION COMPLAINT
*Steinberg v. Icelandic Provisions, Inc.*, No. 3:21-cv-05568

Iceland in the case of Defendant's Icelandic skyr Product.

28.     The reasons include (1) an expectation that a product made in the location where it was first developed will be higher quality than elsewhere and (2) a desire to support and maintain local traditions and cultures at the expense of large-scale production by international conglomerates.

29.     In the present instance, consumers expect Defendant's Icelandic skyr Product to be made in Iceland and contain the unique characteristics of skyr made there.

30.     Authentic skyr contains unique probiotics, a result of the hardy Icelandic dairy cows that produce the milk used as the raw material.

31.     These dairy cows have grazed on the Icelandic tundra, which contains roots and minerals not found elsewhere.

32.     Icelandic dairy cows do not require significant amounts of food.

33.     The result is production of milk with less lactose (sugar), which is a hallmark of authentic Icelandic skyr.

34.     Traditional skyr production involves a dairy centrifuge.

35.     Defendant's alternative method of skyr production relies on ultrafiltration of milk, which concentrates the whey proteins while thickening the skyr.

36.     The result is a skyr that does not resemble traditional and authentic Icelandic skyr.

**IV.     REPRESENTATIONS THAT THE PRODUCT IS MADE IN ICELAND**

37.     Defendant's marketing and advertising of the Product gives consumers the impression it is made in Iceland, including its front label representations of "Traditional Icelandic Skyr," "Icelandic Provisions," and the image of the Icelandic countryside with a snow-covered backdrop. An image of the front label of the Product is below:

CLASS ACTION COMPLAINT
*Steinberg v. Icelandic Provisions, Inc.*, No. 3:21-cv-05568



38.     However, contrary to the Product's representations and omissions, it is not made in Iceland, lacks the type and quality of ingredients historically associated with skyr, and is not made in the traditional methods.

39.     In addition to the front label, the side panel of the Product states:

MADE WITH
ORIGINAL
SKYR
CULTURES

Skyr

Protein packed Skyr ("skeer") has been a provision of Icelanders for nearly 1,000 years.

Our Skyr was developed with Iceland's oldest farmer-owned dairy.

It is the only Skyr available in the US that contains Icelandic Heirloom Skyr Cultures that Icelanders have been enjoying for centuries.

Our heirloom cultures help make our Skyr thick, creamy and delicious.

40.     Through the statement "MADE WITH ORIGINAL SKYR CULTURES," consumers will expect the Product was made in Iceland.

41.     Reasonable consumers are aware that fully processed dairy products can be

9

1  transported across the world, since most have been exposed to cheeses imported from Europe.

2       42.    However, reasonable consumers will not expect that the raw materials for European

3  cheeses would be shipped to the United States, then used to produce the same cheese that would

4  have been made in Europe.

5       43.    In the label statement that the Product "is the only Skyr *available* in the US that

6  contains Icelandic Heirloom Skyr Cultures that *Icelanders have been enjoying* for centuries,"

7  consumers are misled by "available" being substituted for the more accurate word – "made"

8  (emphasis added).

9       44.    These statements gave Plaintiff and consumers the impression they would be

10  consuming the *same* skyr Defendant presumably sells to Icelanders.

11       45.    Defendant's website states "Halló [Hello] From Iceland" over an arctic tundra

12  backdrop of Iceland, as shown below.[4]



22       46.    Defendant capitalizes on its Icelandic association through a national advertising

23  campaign filmed "on location in the coastal village of Vík," with Icelandic actors explaining skyr

24  to American consumers.[5]

25       47.    The press release accompanying the rollout described the advertisements as

26

27  ─────────────────
   [4] IcelandicProvisions.com.

28  [5] Press Release, "Icelandic Provisions says 'Halló From Iceland,' Launching Their First National Advertising Campaign," PR Newswire, Feb. 5, 2020.

CLASS ACTION COMPLAINT
*Steinberg v. Icelandic Provisions, Inc.*, No. 3:21-cv-05568

providing viewers with "what [Defendant] consider[s] to be a snackable taste of Iceland."

48.   Defendant's CEO stated:

> As a company co-founded by the dairy cooperative in Iceland, MS Iceland Dairies, to bring *authentic skyr* to market in the U.S., Icelandic Provisions continues to be driven by our team's commitment to sharing Nordic culture.[6]

49.   However, despite Defendant's representations as to the authenticity of the Product and the purported provenance of *some* of its ingredients, it is not made in Iceland but in Batavia, New York, as indicated in the fine print on the back of the Product (pictured below).



50.   The back panel purports to contain the required designation of the "name and place of business of the manufacturer, packer, or distributor," 21 C.F.R. § 101.5; it states:

> DISTRIBUTED BY
> Icelandic Provisions, New York, NY
> Developed in partnership with
> MS Iceland Dairies, Reykjavik, ISL

51.   Defendant's highlighting of its partnership with "MS Iceland Dairies, Reykjavik,

---

[6] *Id.* (emphasis added).

ISL" is misleading because it furthers the impression the Product is skyr *from* Iceland.

52.     There is no legal requirement that a company identify a partner, only that it discloses the name of the manufacturer (or distributor) and its location.

53.     By including additional information beyond what is required, consumers are misled.

54.     The presentation of the required information – "Distributed By" – causes consumers (if they look at the back label) to feel confident they need not scrutinize the back of the label further for information that will disprove what they have reasonably concluded – that the Product is made in Iceland.

55.     After all, they will think, "The front states 'Icelandic Provisions' and the back indicates it is *distributed* by a New York company *with* an Icelandic dairy company, so the Product is made in Iceland then distributed in this country."

56.     Only further down at the bottom of this dense text does the label disclose "Proudly made in Batavia, NY with domestic and imported ingredients."

57.     By not including where the Product is made in greater proximity to the required name and place of business of the manufacturer or distributor, consumers are misled.

58.     Since consumers know that food and beverages – including items needing refrigeration – are commonly transported across this country, it is reasonable to expect a dairy product such as skyr can be transported by air or in cold storage on container ships and maintain its attributes.

59.     Dairy products are commonly sold in the United States that have been manufactured in Europe, such that it is reasonable to expect the same of skyr.

60.     In fact, Iceland is closer to the United States than Europe.

61.     The distance between New York City and Iceland (2,694 miles) is less than the distance between New York City and California (2,914 miles).

62.     In fact, the Product was previously made in Iceland and exported to the U.S.

63.     However, Defendant decided to produce "the skyr closer to consumers . . . to offer

more competitive prices."[7]

64.    "More competitive prices" is another way to say Defendant would reap greater profits by representing its skyr was made in Iceland even though it was made in the U.S.

65.    Plaintiff and the class members expected that the Product is made with ingredients from Iceland, beyond just the starter cultures identified on the label.

66.    In conjunction with the Product's packaging and extensive advertisements and marketing, this causes consumers to mistakenly believe that they are purchasing a Product with immediate Icelandic origins.

## V.    RELIANCE AND ECONOMIC INJURY

67.    Plaintiff sought to purchase Icelandic skyr that was made in Iceland.

68.    Plaintiff expected Defendant's Icelandic skyr Product would have ingredients from Iceland and be made in traditional Icelandic methods.

69.    Plaintiff selected Icelandic Provisions' skyr Product instead of other varieties of skyr because she believed that, unlike the other brands of Icelandic skyr, Icelandic Provisions' skyr Product was made in Iceland.

70.    Plaintiff understood the representations on the front of the label – "Traditional Icelandic Skyr," above an Icelandic pastoral setting – and the notable absence of the words "style" or "type" to modify "skyr," to indicate the Product was made in Iceland.

71.    Plaintiff viewed the website and other marketing representations which also created the impression the Product was made in Iceland.

72.    Plaintiff did not expect the Product to be made in upstate New York because of the Icelandic representations.

73.    Plaintiff saw and relied on the advertising identified herein, which misleadingly emphasizes Iceland, even though the Product is not made in Iceland.

74.    Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

---

[7] Staff, Iceland's largest skyr producer, the dairy MS, starts producing Icelandic skyr in the US, Mar. 29, 2017, Iceland Magazine.

CLASS ACTION COMPLAINT
*Steinberg v. Icelandic Provisions, Inc.*, No. 3:21-cv-05568

75.     The Product costs more than similar products without misleading representations and but for the misleading representations, would have cost less.

76.     Plaintiff paid more for the Product than she otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

77.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.79 for a 5.3 oz cup, excluding tax, compared to other similar products represented in a non-misleading way, and is sold at a price that is higher than the price of the Product would have been if it were represented in a non-misleading way.

78.     The competing brands of skyr cost less than Defendant's Product, at an average price of no more than $2.19 for a 5.3 oz cup.

**PARTIES**

79.     Plaintiff Rivka Steinberg is a resident of Moraga, Alameda County, California.

80.     During the relevant statutes of limitations for each cause of action, including between August and October 2020, among other times, Plaintiff Steinberg purchased the Product, including the Traditional Skyr Icelandic Provisions Plain Yogurt, for personal and household consumption and use, in reliance on the representations that the Product was made in Iceland.

81.     Plaintiff Steinberg purchased the Product at stores including Whole Foods Market, 399 4th Street, San Francisco, California 94107.

82.     Plaintiff Steinberg purchased the Icelandic Provisions skyr Product over other Icelandic skyr products, made by companies like Siggi's, Trader Joe's, Dannon, Aldi, Liberte, and others, because she believed Defendant's skyr Product was made in Iceland with Icelandic ingredients and in traditional Icelandic methods.

83.     Plaintiff paid no less than the above-referenced price for the Product.

84.     Plaintiff prefers to consume foods which have enduring and authentic connections to a place associated with them, such as Italian tomatoes and Florida oranges.

85.     Plaintiff expects that foods which are associated with a particular geographic place will be higher quality than *versions* of those foods made elsewhere.

86.     Plaintiff expects that a place most associated with a food has the most knowledge

1   about how to produce the food in the way they, and others, are accustomed to.

2        87.   Plaintiff and reasonable consumers have such preferences because they recognize the

3   value of certain products to specific geographic areas and choose to reward this authenticity with

4   their purchases and money.

5        88.   Plaintiff expected the Product would be made from Icelandic ingredients, beyond the

6   skyr cultures referenced on the package.

7        89.   Plaintiff expected the Product would be made in Iceland because that is what the

8   label said and/or implied.

9        90.   Defendant Icelandic Provisions, Inc., is a Delaware corporation with a principal place

10  of business in New York, New York, in New York County.

11       91.   Defendant is the leader in the production of skyr.

12       92.   Defendant's skyr Product is sold in thousands of locations in California, from

13  grocery stores to convenience stores, to big box stores, specialty markets, and chain drug stores, and

14  it is available online.

15                          **JURISDICTION AND VENUE**

16       93.   This Court has original subject matter jurisdiction over this putative class action

17  pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).

18       94.   Plaintiff Steinberg is a citizen of Moraga, Alameda County, California.

19       95.   Defendant is a Delaware corporation with its principal place of business in New

20  York, New York, New York County.

21       96.   Diversity exists because Plaintiff Steinberg and Defendant are citizens of different

22  states.

23       97.   Upon information and belief, sales of the Product and any available statutory and

24  other monetary damages exceed $5 million during the applicable statutes of limitations, exclusive

25  of interest and costs.

26       98.   Venue is proper because a substantial part of the events or omissions giving rise to

27  the claim occurred within this District, including the purchases of Plaintiff Rivka Steinberg and her

28  awareness of the representations and omissions at issue.

99.     This Court has personal jurisdiction over Defendant because it is transacts business within California and sells its products to consumers from thousands of stores within California.

**Intradistrict Assignment**

100.    Pursuant to Civil Local Rule 3-2(c)-(d), a substantial part of the events giving rise to the claims arose in Alameda County, and this action should be assigned to the Oakland Division or the San Francisco Division.

**CLASS ACTION ALLEGATIONS**

101.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3).

102.    Plaintiff seeks to represent the following class (the "Class"):

> All persons residing in California who purchased the Product for personal or household consumption and use since July 20, 2015.

103.    Excluded from the Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

104.    The Class consists of hundreds of thousands of persons, and joinder is impracticable.

105.    Common questions of law or fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and the Class members are entitled to injunctive relief and damages.

106.    Plaintiff's claims and bases for relief are typical of those of the other Class members because all were subjected to the same unfair and deceptive representations and omissions.

107.    Plaintiff is an adequate Class representative. Plaintiff's interests do not conflict with the interests of the other Class members. Plaintiff has selected competent counsel that are experienced in class action and other complex litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

108.    Certification is appropriate under Rule 23(b)(3) because the predominance and

16

1   superiority requirements are met.

2      109.   Common questions predominate over individual questions because the focus of

3   Plaintiff's claims is on Defendant's practices.

4      110.   A class action is superior to other available methods for adjudication of this

5   controversy, since individual actions would risk inconsistent results, be repetitive, and are

6   impractical to justify, as the claims are modest relative to the scope of the harm.

7      111.   Certification is appropriate under Rule 23(b)(2) to the extent the Class seeks

8   declaratory and injunctive relief because Defendant has acted or refused to act on grounds that apply

9   generally to the Class.

10     112.   Plaintiff anticipates this Court can direct notice to the Class by publication in major

11  media outlets and the Internet.

12                          **CLAIMS FOR RELIEF**

13                          **FIRST CLAIM**
    **Violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.***
14                          **Unlawful Conduct Prong**
                            **By Plaintiff on Behalf of the Class**
15

16     113.   Plaintiff incorporates all preceding paragraphs.

17     114.   California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.*

18  ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice."

19     115.   Defendant's representations and omissions are "unlawful" because they violate the

20  Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

21          1.   21 U.S.C. § 343, which deems food misbranded when the label

22               contains a statement that is "false or misleading in any particular,"

23               with "misleading" defined to "take[] into account (among other

24               things) not only representations made or suggested by statement,

25               word, design, device, or any combination thereof, but also the extent

26               to which the labeling or advertising fails to reveal facts material"; and

27          2.   21 U.S.C. § 321(n), which states the nature of a false and misleading

28               advertisement.

                                    17

1    116.   Defendant's conduct is "unlawful" because it violates the California's False

2  Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.* ("FAL"), and California's Consumers

3  Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.* ("CLRA").

4    117.   Defendant's conduct violates California's Sherman Food, Drug, and Cosmetic Law,

5  CAL. HEALTH & SAF. CODE § 109875 *et seq.* ("Sherman Law"), including:

6        1.   Section 110100 (adopting all FDA regulations as state regulations);

7        2.   Section 110290 ("In determining whether the labeling or

8             advertisement of a food . . . is misleading, all representations made or

9             suggested by statement, word, design, device, sound, or any

10            combination of these, shall be taken into account.  The extent that the

11            labeling or advertising fails to reveal facts concerning the food . . . or

12            consequences of customary use of the food . . . shall also be

13            considered.");

14       3.   Section 110390 ("It is unlawful for any person to disseminate any

15            false advertisement of any food . . . . An advertisement is false if it is

16            false or misleading in any particular.");

17       4.   Section 110395 ("It is unlawful for any person to manufacture, sell,

18            deliver, hold, or offer for sale any food . . . that is falsely advertised.");

19       5.   Section 110398 ("It is unlawful for any person to advertise any food,

20            drug, device, or cosmetic that is adulterated or misbranded.");

21       6.   Section 110400 ("It is unlawful for any person to receive in commerce

22            any food . . . that is falsely advertised or to deliver or proffer for

23            delivery any such food . . . ."); and

24       7.   Section 110660 ("Any food is misbranded if its labeling is false or

25            misleading in any particular.").

26    118.   Each of the challenged statements, representations, omissions, and actions taken by

27  Defendant violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful"

28  prong of the UCL.

119.    Defendant leveraged its deception to induce Plaintiff and the Class members to purchase a Product that was of lesser value and quality than advertised.

120.    Defendant's deceptive advertising caused Plaintiff and the Class members to suffer injury-in-fact and to lose money or property.

121.    Defendant's actions denied Plaintiff and the Class members the benefit of the bargain when they decided to purchase the Product instead of other products that are less expensive and are also not made in Iceland.

122.    Had Plaintiff and the Class members been aware of Defendant's false and misleading advertising, they would not have purchased the Product at all, or would have paid less than they did.

123.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

124.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that were unjustly acquired through such acts.

125.    Therefore, Plaintiff prays for relief as set forth below.

## SECOND CLAIM
**Violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.*
Unfair and Fraudulent Conduct Prongs
By Plaintiff on Behalf of the Class**

126.    Plaintiff incorporates all preceding paragraphs.

127.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

128.    The false and misleading representations of the Product constitute "unfair" business acts and practices because they are immoral, unscrupulous, and offend public policy.

129.    The gravity of the conduct at issue outweighs any conceivable benefit.

130.    The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiff and the Class members.

131.    Defendant's representations and omissions deceived Plaintiff and the Class members about the Product's origins, about the presence of ingredients from Iceland, and about whether the Product was made in the traditional method.

132.    Defendant knew or reasonably should have known that its statements and omissions concerning the Product were likely to deceive consumers.

133.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

134.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

135.    Therefore, Plaintiff prays for relief as set forth below.

**THIRD CLAIM**
**Violation of California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.***
**By Plaintiff on Behalf of the Class**

136.    Plaintiff incorporates all preceding paragraphs.

137.    The FAL prohibits "mak[ing] any false or misleading advertising claim."

138.    Defendant makes "false [and] misleading advertising claim[s]" by deceiving consumers as to the immediate origins of the Product, namely, that it was made in Iceland, with all or most of its ingredients produced in Iceland, such as milk from Icelandic dairy cows, and made in traditional Icelandic methods.

139.    In reliance on these false and misleading advertising claims, Plaintiff and the Class members purchased and consumed the Product without the knowledge that it was not made in Iceland.

140.    Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

141.    As a result, Plaintiff and the Class members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

142.    Therefore, Plaintiff prays for relief as set forth below.

**FOURTH CLAIM**
**Violation of California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq.***
**By Plaintiff on Behalf of the Class**

143.   Plaintiff incorporates all preceding paragraphs.

144.   The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

145.   Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Product primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

    1.   Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

    2.   Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits, or ingredients that they do not have;

    3.   Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

    4.   Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

    5.   Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

146.   Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code section 1780.

147.   If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the Class members will continue to suffer harm.

148.   Pursuant to the provisions of California Civil Code section 1782(a), Shannah Smith, a resident of Redwood City, San Mateo County, California, sent a CLRA Notice to Defendant's principal place of business in New York County and its registered agent in Delaware on May 6, 2021, via co-counsel Sheehan & Associates, P.C., via certified mail, return receipt requested.

21

149.    Based on information obtained from the website of the California Secretary of State at the time the CLRA Notices were sent, Defendant does not have a principal place of business or registered agent within California.

150.    Shannah Smith informed Defendant that she purchased the Product for personal and household use and consumption in 2021, including but not limited to April 2021.

151.    The CLRA Notices detailed the violations of the CLRA.

152.    Shannah Smith, on behalf of herself and all others similarly situated in California, and the general public, demanded that Defendant remedy the violations within 30 days of receipt of the CLRA Notices and take corrective action.

153.    Shannah Smith, on behalf of herself and all others similarly situated in California, and the general public, informed Defendant that if it fails to take these corrective actions, she would bring a class action, in any appropriate court, or add claims under the CLRA to any existing class action, asserting claims for actual and punitive damages under the CLRA and any other applicable consumer laws and regulations to compel these steps, as well as seeking any other legally appropriate restitution or damages, attorneys' fees, costs, incentive awards, and the costs of class notice and administration.

154.    On May 12, 2021, the CLRA Notice sent to Defendant's registered agent in Delaware was signed for by Defendant's registered agent in Delaware.

155.    On May 10, 2021, the CLRA Notice sent to New York arrived at the address that was listed on the New York Secretary of State's website as Defendant's principal place of business.

156.    According to a report from the U.S. Postal Service, Defendant moved from that address and no forwarding address was provided.

157.    The CLRA Notice that was sent to the New York address was returned, in its original envelope, to the office of co-counsel, Sheehan & Associates, P.C.

158.    Attorneys representing Defendant contacted Sheehan & Associates, P.C., in a letter dated June 10, 2021.

1   159. Defendant acknowledged receipt of the CLRA Notice sent by Shannah Smith.

2   160. Defendant denied all violations referenced by Shannah Smith and refused to correct

3 any of the challenged practices.

4   161. Plaintiff seeks injunctive relief, restitution, and monetary damages for Defendant's

5 violations of the CLRA.

6   162. Therefore, Plaintiff prays for relief as set forth below.

7            **FIFTH CLAIM**
            **Unjust Enrichment**

8        **By Plaintiff on Behalf of the Class**

9   163. Plaintiffs incorporate all preceding paragraphs.

10   164. Defendant obtained benefits and monies because the Product was not as represented

11 and expected, to the detriment and impoverishment of Plaintiffs and the Class members, who seek

12 restitution and disgorgement of inequitably obtained profits.

13   165. Therefore, Plaintiffs pray for relief as set forth below.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
*Steinberg v. Icelandic Provisions, Inc.*, No. 3:21-cv-05568

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the members of the proposed Class, prays for judgment and relief on all of the legal claims as follows:

A.  Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as counsel for the Class;

B.  A declaration that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.  A declaration that Defendant has committed the violations alleged herein;

D.  For any and all injunctive relief the Court deems appropriate;

E.  For monetary damages, including but not limited to any compensatory, incidental, or consequential damages, in accordance with applicable law;

F.  For any and all equitable monetary relief the Court deems appropriate;

G.  For punitive damages;

H.  For attorneys' fees;

I.  For costs of suit incurred;

J.  For pre- and post-judgment interest at the legal rate on the foregoing sums; and

K.  For such further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action so triable.

Date: July 20, 2021

Respectfully submitted,

By: */s/ George V. Granade*
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Michael R. Reese (State Bar No. 206773)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025

24

Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Spencer Sheehan (*pro hac vice* to be filed)
*spencer@spencersheehan.com*
**SHEEHAN & ASSOCIATES, P.C.**
60 Cuttermill Road, Suite 409
Great Neck, New York 11021
Telephone: (516) 268-7080
Facsimile: (516) 234-7800

*Counsel for Plaintiff Rivka Steinberg*
*and the Proposed Class*

CLASS ACTION COMPLAINT
*Steinberg v. Icelandic Provisions, Inc.*, No. 3:21-cv-05568