1

2

3

4                                  UNITED STATES DISTRICT COURT

5                                NORTHERN DISTRICT OF CALIFORNIA

6

7    RIVKA STEINBERG,                              Case No. 21-cv-05568-EMC

8                        Plaintiff,

9            v.                                    ORDER GRANTING DEFENDANT'S
                                                   MOTION TO DISMISS
10   ICELANDIC PROVISIONS, INC.,
                                                   Docket No. 21
11                       Defendant.

12

13

14           Plaintiff Rivka Steinberg ("Steinberg") filed this action against Defendant Icelandic

15   Provisions, Inc. ("Icelandic Provisions") individually and on behalf of all others similarly situated.

16   *See* Docket No. 1 ("Complaint or Compl.").  Steinberg alleges that Icelandic Provisions's label on

17   its Skyr product, a traditional Icelandic cultured dairy product ("Product") misrepresents that the

18   Product is made in Iceland and therefore violates California's consumer protection statutes.  *Id.*

19   Pending before the Court is Icelandic Provisions's motion to dismiss Steinberg's Complaint.  *See*

20   Docket No. 21 ("Mot.").  For the following reasons, the Court **GRANTS** Icelandic Provisions's

21   motion to dismiss with prejudice.

22                             I.        **BACKGROUND**

23   A.      Factual History

24           Icelandic Provisions manufactures and distributes Skyr (the "Product") in the United

25   States.  The Product is an "Icelandic cultured dairy product" with "the consistency of Greek

26   yogurt, but a milder flavor."  Compl. ¶¶ 1, 2, 49; Mot. at 2.  The packaging on the front of the

27   Product states, "Traditional Icelandic Skyr" and "Icelandic Provisions" and has an image of a

28   countryside with a snow-covered backdrop.  Compl. ¶ 37.  An image of the front label of the

United States District Court
Northern District of California

Product is below:



*Id.*  Steinberg points out that over a dozen other competing Icelandic skyr products accurately label their products as "Icelandic style," unlike the Product here.  *Id.* ¶¶ 13, 20–24.

On the back of the Product, in the same-size font, the packaging states, "Distributed by Icelandic Provisions, New York, NY," "Developed in partnership with MS Iceland Dairies, Reykjavik, ISL," and "Proudly made in Batavia, NY with domestic and imported ingredients."  *Id.* ¶¶ 37, 49.  An image of the back panel of the Product is below:

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Id.* ¶ 49.  The side panel of the Product states that it is "made with original Skyr cultures," "was developed with Iceland's oldest farmer-owned dairy," and "is the only Skyr available in the US that contains Icelandic Heirloom Skyr Cultures that Icelanders have been enjoying for centuries." *Id.* ¶ 39.  An image of the side panel is below:



*Id.* ¶ 39.  Steinberg does not dispute that the Product is "made with original Skyr cultures" or that the Product "was developed with Iceland's oldest farmer-owned dairy."  *See id.* ¶¶ 49–50.  And there is no dispute that the Product is not made in Iceland but in Batavia, New York.  *Id.* ¶ 49.

She alleges, however, that California consumers "expect[] that the Product is made with ingredients from Iceland, beyond just the starter cultures identified on the label."  *Id.* ¶ 65.  For example, according to Steinberg, consumers "expect Defendant's Icelandic skyr Product to be made in Iceland and contain the unique characteristics of skyr made there."  *Id.* ¶ 29.  She contends, "Authentic skyr contains unique probiotics, a result of the hardy Icelandic dairy cows that produce the milk used as the raw material," which has "less lactose (sugar)," "a hallmark of authentic Icelandic skyr."  *Id.* ¶¶ 30, 33.  Moreover, "[t]raditional skyr production involves a dairy centrifuge," which differs from "Defendant's alternative method of skyr production" that "relies on ultrafiltration of milk, which concentrates the whey proteins while thickening the skyr."  *Id.* ¶¶ 34–35.

United States District Court
Northern District of California

1    At the time of the Complaint, the homepage of Icelandic Provisions's website stated

2    "Halló [Hello] From Iceland" over an arctic tundra backdrop of Iceland.  *Id.* ¶ 45.  But the top of

3    the website also stated that "Icelandic Provisions is the only Skyr *made in the US* that uses an

4    original Icelandic recipe and heirloom Icelandic Skyr cultures."  *See* Icelandic Provisions (July 21,

5    2021), https://web.archive.org/web/20210721033833/https://www.icelandicprovisions.com/

6    (homepage as it existed on July 21, 2021, preserved by Internet Archive WayBack Machine)

7    (emphasis added).[1]  Icelandic Provisions also allegedly released a national advertising campaign

8    filmed "on location in the coastal village of Vík," with Icelandic actors explaining skyr to

9    American consumers.  *Id.* ¶ 46.

10    Steinberg alleges that she understood the representations on the front of the label, the

11    website, and other marketing representations to indicate that the Product is made in Iceland.  *Id.*

12    ¶¶ 70–73.  She pleads that "[a]s a result of the false and misleading labeling, the Product is sold at

13    a premium price, approximately no less than $2.79 for a 5.3 oz cup, excluding tax, compared to

14    other similar and allegedly non-misleading products that are sold at a lesser price, an average price

15    of no more than $2.19 for a 5.3 oz cup."  *Id.* ¶¶ 77–78.

16    Between August and October 2020, Steinberg purchased the Product for personal or

17    household consumption and use.  *Id.* ¶¶ 80–81.  She purchased the Product over competing

18    Icelandic skyr products because she believed the Product was made in Iceland, unlike its

19    competitors.  *Id.* ¶¶ 69, 82.  Had she known the truth, she allegedly would not have bought the

20    Product, would have paid less for it, or would have purchased one of the numerous, less costly

21

22    ─────────────────

23    [1] Icelandic Provisions requests that the Court judicially notice its website, which Steinberg
discusses explicitly in her Complaint.  Mot. at 10 n.6.  Under Federal Rule of Evidence 201, a
court "may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is
24    generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily
determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).
25    Steinberg contends that the content of the website is a disputed fact because the homepage that
Icelandic Provisions cites is from October 25, 2021, which does not appear the same way as it did
26    around the time of the Complaint.  Opp. at 10 n.5.  But the homepage that Steinberg cites, from
the time of the Complaint, also states that the Product is "made in the US[.]"  *See* Icelandic
27    Provisions, WWW.ICELANDICPROVISIONS.COM (July 21, 2021),
https://web.archive.org/web/20210721033833/https://www.icelandicprovisions.com/ (homepage as it
28    existed on July 21, 2021, preserved by Internet Archive WayBack Machine); Reply at 5 n.3.
Accordingly, the Court **GRANTS** judicial notice of Icelandic's website as it existed on July 21, 2021.

competitors.  *Id.* ¶¶ 74–78.

B.    Procedural History

On July 20, 2021, Steinberg filed the Complaint against Icelandic Provisions, alleging violations of (1) the "Unlawful Conduct Prong" of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) the "Unfair and Fraudulent Conduct Prongs" of the UCL; (3) California's False Advertising Law ("FAL"), Cal. Bus. & Prof Code § 17500, *et seq.*; (4) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; and (5) a claim for unjust enrichment.  Docket No. 1.  She filed the Complaint on behalf of a proposed class of all persons residing in California who purchased the Product for personal or household consumption and use since July 20, 2015.  *Id.* ¶ 102.  She seeks monetary and injunctive relief.  *Id.* at 24.  On October 25, 2021, Icelandic Provisions filed the present motion to dismiss the Complaint.  Docket No. 21 ("Mot.").

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] must . . . suggest that the claim has at least a plausible chance of success."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (internal quotation marks omitted).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

1    misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a

2    'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

3    unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). If the court dismisses pleadings, it "should

4    grant leave to amend even if no request to amend the pleading was made, unless it determines that

5    the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

6    F.3d 1122, 1127 (9th Cir. 2000).

7                                    **III.    DISCUSSION**

8           Icelandic Provisions asserts that Steinberg fails to plausibly allege any violation of the

9    UCL, CLRA, and FAL because she fails to sufficiently plead that its conduct "is 'likely to

10   deceive' a 'reasonable consumer,'" which is required under all three statutes. Mot. at 5 (citing

11   *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). It argues that Steinberg lacks

12   a viable theory of misrepresentation because "a reasonable consumer would not be misled by the

13   Product's label" and "[a]ny confusion resulting from the Product's label would be dispelled by the

14   explicit identification of the location where the product is made." Mot. at 6–12.

15   A.     Reasonable Consumer Test

16          "The UCL, CLRA, and FAL, under which Plaintiff's deceptive labeling claims are

17   brought, all prohibit unlawful, unfair, or fraudulent business practices." *Ebner v. Fresh, Inc.*, 838

18   F.3d 958, 963 (9th Cir. 2016). The UCL prohibits "any unlawful, unfair, or fraudulent business

19   act or practice." Cal. Bus. & Prof. Code § 17200. The CLRA prohibits specific "unfair methods

20   of competition and unfair or deceptive acts . . . intended to result or that results in the sale or lease

21   of goods or services to any customer." Cal. Civ. Code § 1770(a). And the FAL prohibits false or

22   misleading advertising, which "is untrue or misleading, and which is known, or . . . should be

23   known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. The California Supreme

24   Court has recognized "that these laws prohibit 'not only advertising which is false, but also

25   advertising which[,] although true, is either actually misleading or which has a capacity, likelihood

26   or tendency to deceive or confuse the public.'" *Williams*, 552 F.3d at 938. Because all three

27   statutes require a showing that the challenged conduct "is 'likely to deceive' a 'reasonable

28   consumer'" courts "tend to analyze the three statutes together." *Eidmann v. Walgreen Co.*, 522 F.

United States District Court
Northern District of California

6

1    Supp. 3d 634, 643 (N.D. Cal. 2021).

2           The reasonable consumer standard requires that "members of the public are likely to be

3    deceived" by the pertinent advertising.  *See Ebner*, 838 F.3d at 965.  This standard in turn

4    "requires more than a mere possibility" that the statement at issue "might conceivably be

5    misunderstood by some few consumers viewing it in an unreasonable manner."  *Id.* (internal

6    quotation marks omitted).  "Rather, the reasonable consumer standard requires a probability 'that a

7    significant portion of the general consuming public or of targeted consumers, acting reasonably in

8    the circumstances, could be misled.'"  *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 165 Cal. App.

9    4th 496, 508 (2003)).  California state and federal courts have recognized that whether a

10   reasonable consumer would be misled is generally a question of fact not amenable to

11   determination on a motion to dismiss; however, there are "rare situation[s]" where factual

12   allegations may fail as a matter of law.  *See Williams*, 552 F.3d at 938–39; *Robie v. Trader Joe's*

13   *Co.*, No. 20-CV-07355-JSW, 2021 WL 2548960, at *5 (N.D. Cal. June 14, 2021) ("courts have

14   granted motions to dismiss under the UCL and similar statutes on the basis that the alleged

15   misrepresentations were not false, misleading, or deceptive as a matter of law").  As the California

16   Court of Appeal explained, "Although 'whether consumers are likely to be deceived is' typically

17   'a question of fact,' that issue may be resolved on demurrer if 'the facts alleged fail as a matter of

18   law to show' that a 'reasonable consumer would be misled.'"  *Shaeffer v. Califia Farms, LLC*, 44

19   Cal. App. 5th 1125, 1140 (2020) (internal citations omitted).

20   B.    <u>The Product's Front Label Would Not Mislead a Reasonable Consumer to Believe that the</u>

21          <u>Product is Made in Iceland</u>

22          Steinberg contends that Icelandic Provisions deceptively marketed the Product to target

23   consumers who are interested in purchasing a Product that is authentically made in Iceland,

24   through the use of the front-label representations such as "Icelandic Provisions" and "Traditional

25   Icelandic Skyr" as well as the image of a countryside with a snow-covered backdrop.  Docket No.

26   30 ("Opp.") at 7.  For the reasons explained below, these words and imagery do not represent that

27   the Product is made in Iceland.

28          First, although the Ninth Circuit has held that brand names alone can be misleading, the

United States District Court
Northern District of California

trade name "Icelandic Provisions" on the Product's front label does not represent that the Product is made in Iceland. In *Moore v. Mars Petcare US, Inc.*, the Ninth Circuit held that "brand names *by themselves* can be misleading in the context of the product being marketed." *Moore*, 966 F.3d at 1018 (emphasis in original). "Descriptive brand names require of the consumer 'little thought,' which can make consumers susceptible to purchasing because 'they won't have the time or interest to read about [the product] on [the] website or the back of the box.'" *Id.* For example, "a product called 'One a Day' gummy vitamins, which required two gummies a day for a full dosage, is explicitly misleading." *Id.* (citing *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172 (2018)). Likewise, the labeling of "prescription pet food" can be misleading because a "reasonable consumer being told about 'prescription pet food' may be surprised to learn that there are no drugs or controlled ingredient in the pet food by nature of brand names like 'Prescription Diet' or an 'Rx' symbol on the food packaging." *Id.* But "if common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage." *Id.*

Here, the alleged deception is not as explicit as the two examples above. The brand name "Icelandic Provisions" is not specific as to the place of production. Cases where courts examined the label as a whole to determine whether a reasonable consumer would be deceived are more apt. In *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177 (N.D. Cal. 2021), the district court held that the use of the "Clorox" brand name does not "automatically imply that the product must contain sanitizing or disinfecting capabilities" for the product at issue, bleach. *Clorox*, 514 F. Supp. at 1187. It held that there was no basis for misrepresentation because the "label made no statement or suggestion that the product at issue is suitable for sanitization or disinfection" and "the back label specifically states: 'Not for sanitization or disinfection.'" *Id.* at 1185, 1187. Similarly, in *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012), the court held a reasonable consumer could not be led to believe that the product at issue contains raw sugar because the word "raw" does not appear on the packaging except for the brand name "Raw2f." *Rooney*, 2012 WL 1512106, at *4. Moreover, the product was repeatedly labeled as turbinado sugar which is widely known as raw sugar and therefore the consumer was not deceived. *Id.* The question here is whether the brand name, when taken together with the statement "Traditional

8

1    Icelandic Skyr" and the image of a snowy countryside could mislead reasonable consumers into

2    believing that the Product is made in Iceland.

3        Icelandic Provisions asserts that a reasonable consumer would not be misled by the phrase

4    "Traditional Icelandic Skyr" because a reasonable consumer would understand it to refer to a type

5    of cultured dairy product, which is an accurate representation, and not the location where it was

6    manufactured.  Mot. at 7.  Steinberg responds that "there is nothing that prevents the statements at

7    issue from being *both* statements indicating the Products have the characteristics of Icelandic Skyr

8    *and* statements that the Products are made in Iceland."  Opp. at 7–8 (emphasis in original).  The

9    Ninth Circuit has held, "If there are two alternative explanations, one advanced by defendant and

10   the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a

11   motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

12       For example, in *de Dios Rodriguez*, the district court held that the products at issue,

13   tortillas, were "misleading by causing a reasonable consumer to believe that the [p]roducts are

14   made in Mexico" due to phrases on the front label such as "'A Taste of Mexico,' a Mexican flag

15   front and center, the brand name 'La Banderita,' a Mexican flag with the word 'Authentic,' and

16   other Spanish words and phrases, such as 'Sabrosísimas' or 'Tortillas de Maiz.'"  *de Dios*

17   *Rodriguez v. Ole Mexican Foods Inc.*, 2021 WL 1731604, at *4 (C.D. Cal. Apr. 22, 2021).  In

18   reaching its conclusion, the *de Dios Rodriguez* court distinguished *Dumas v. Diageo PLC*, 2016

19   WL 1367511 (S.D. Cal. Apr. 6, 2016).  *Id.*

20       In *Dumas*, the district court held that a reasonable consumer would not believe that the

21   product at issue, beer, was made in Jamaica because of phrases like "Jamaican Style Lager" and

22   "The Taste of Jamaica" on the packaging.  *Dumas*, 2016 WL 1367511 at *4.  Plaintiffs alleged

23   that the phrase "The Taste of Jamaica" was deceptive because the ingredients do not come from

24   Jamaica but from the United States.  *Id.*  The court disagreed and held that "The Taste of Jamaica"

25   is a vague and meaningless phrase and that the use of the word "style" in "Jamaican Style Lager"

26   indicates "that the product is not from Jamaica."  *Id.*  It concluded that when the phrases were

27   "viewed together" a reasonable interpretation is not that the beer is made in Jamaica, but that "the

28   beer is made in a way that people identify with Jamaica (either a particular process and/or a certain

United States District Court
Northern District of California

9

recipe) and evokes the spirit or feeling of Jamaica." *Id.* The *de Dios Rodriguez* court held that unlike in *Dumas*, there was no use of "style" on the tortilla labels that would suggest that the tortillas were not from Mexico. *de Dios Rodriguez*, 2021 WL 1731604, at *4. It concluded that "even if the representations at issue do in fact serve to evoke[ ] the spirit or feeling of [Mexico], . . . they may *also* mislead a reasonable consumer" and therefore denied the motion to dismiss. *Id.* (emphasis in original) (internal quotation marks omitted).

In *Govea v. Gruma Corp.*, 2021 WL 4518457 (C.D. Cal. Aug. 18, 2021) ("*Govea II*"), the court held that although the packaging of the tortilla products at issue "evokes the spirit of Mexico" it "may also mislead a reasonable consumer about the Tortillas' geographic origin (a conclusion bolstered by the Survey results)." *Govea II*, at *2 (alterations omitted). In an earlier motion to dismiss, *Govea v. Gruma Corp.*, 2021 WL 1557748 (C.D. Cal. Mar. 1, 2021) ("*Govea I*"), the district court had dismissed the CLRA, FAL, and UCL claims involving tortillas whose packaging included the phrase "a piece of Mexico" in Spanish because the packaging "makes no claim that the Tortillas are 'born in' or 'originated in' Mexico." Mot. at 6. But in *Govea II*, the plaintiffs alleged two new facts: (1) that "[u]n pedacito de México" translates to "a piece *from* Mexico," in addition to "a piece *of* Mexico"; and (2) the results of a third-party online survey where 70.1% out of 401 participants believed that the product at issue was made in Mexico after reviewing the front and back labels. *Govea II*, at *1 (emphasis in original). As a result, the court denied the motion to dismiss the amended complaint. *Govea* II, at *2. *See also Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (denying a motion to dismiss because it was plausible that the phrase "Belgium 1926" on the front of Godiva Chocolates represented both the factually accurate "provenance of the company—Belgium, in 1926—and a [false] representation that its chocolates continue to be manufactured there").

In this case, however, the words and imagery on the Product's front label are distinguishable from the labels in the cases above. The Product's front label does not have Icelandic words, the Icelandic flag, or the word "authentic" like the label in *de dios Rodriguez*. It does not use the word phrase "Iceland" and the date of founding like in *Hesse*. And the Product label does not contain any statements equivalent to "a piece from Mexico," nor a consumer survey

about the perception of the Product's label as in *Govea II*.  Reply at 5–6.  Instead, the Product label only contains the brand name, a nonspecific painted image (which is not specific to Iceland), and the word "traditional Icelandic" on the package,[2] a term akin in function to "Jamaican style" in *Dumas*.

This case is therefore more like *Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953 (D. Haw. 2019).  In *Maeda*, the central issue was whether the defendant "markets and packages the Hawaiian Snacks in such a manner to suggest that they are made in Hawai'i when they in fact originate from Washington."  *Maeda*, 407 F. Supp. at 970.  The packaging for the products at issue, potato chips and onion rings, all included the word "Hawaiian" at the top and included "a variety of imagery associated with Hawai'i, such as hula dancers, canoes, beaches, palm trees, and volcanoes."  *Id.*  Similar to the case here, the label in *Maeda* did not contain the textual qualifiers found in *Dumas*, *e.g.*, "style" but the *Maeda* court held that "the word 'Hawaiian,' even when accompanied by the subject images, does not represent that the Hawaiian Snacks are from Hawai'i."  *Id.* at 973.

The court held that the label was not misleading because it does not have "specific geographic indicia related to Hawaii—such as a map, invitation to visit Defendant on the island, or Hawaiian address or geographic emblem—that indicate a 'specific place that the Product is produced and that the consumer can visit.'"  *Id.* at 972 (discussing *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at *1–2, *7 (N.D. Cal. Sept. 1, 2017), *on reconsideration in part*, 2017 WL 5665654 (N.D. Cal. Nov. 27, 2017) (finding "the map of Hawaii identifying Kona's brewery on the Big Island, and the statement 'visit our brewery and pubs whenever you are in Hawaii,'" are "specific and measurable representations that could deceive consumers into believing that they were purchasing beer made in Kona, Hawaii at the specific brewery location listed and depicted on the package"); *Reed v. Gen. Mills, Inc.*, 2019 WL 2475706, at *4–5 (W.D. Wash. June 13, 2019) (denying motion to dismiss claims alleging misrepresentation as to origin of products because statements such as "VISIT OUR HOME

---

[2] The term "traditional Icelandic" no more denotes a geographic location of production than, *e.g.*, the term "Greek yogurt."

United States District Court
Northern District of California

1    FARM," "SKAGIT VALLEY, WA," and "SINCE 1972" "indicate a specific place that the

2    Product is produced and that the consumer can visit . . . not [merely] a feeling that the Product is

3    'similar to' or 'evokes the spirit of' Washington"); *Peacock v. 21st Amendment Brewery Cafe,*

4    *LLC*, 2018 WL 452153, at *5 (N.D. Cal. Jan. 17, 2018) ("Peacock plausibly alleges that the Bay

5    Area map with an 'x' marking 'The Brewery' is likely to deceive a reasonable consumer . . . it

6    would be reasonable for a consumer looking at [defendant]'s carton map to believe that its beer

7    was brewed in California.")).  As in *Maeda*, there are no images, maps, or invitation to visit a

8    particular place in Iceland on the Product's label that would mislead a reasonable consumer to

9    believe that the Product is made in Iceland.

10           Furthermore, Steinberg's claim of deception is weakened by the undisputed fact that the

11   Product's Icelandic heirloom skyr cultures—which help make the yogurt thick and creamy—*are*

12   *in fact from Iceland*.  *Id.*; Compl. ¶¶ 49–50.  Steinberg does not dispute that the Product contains

13   cultures originally sourced from Iceland or that the Product is developed in partnership with

14   Iceland's oldest farmer-owned dairy.  Compl. ¶¶ 49–50.  She also does not dispute that the Product

15   tastes like authentic Skyr or has the consistency of Skyr.  *See id.* ¶¶ 2–4.  Hence, what Steinberg

16   claims is misleading is the fact that the other ingredients of Skyr are from other countries and that

17   the product is manufactured in Iceland.  *Id.* ¶¶ 65, 138.  Since the core element of the Skyr is from

18   Iceland, Steinberg's claim is more specific and nuanced than those in the cases she relies upon.

19           For instance, the narrow claim of deception here differs from the wholesale

20   misrepresentation in *Williams*, 552 F.3d at 938, where the Ninth Circuit concluded that the

21   packaging on the product could likely deceive a reasonable consumer because the product was

22   "called 'fruit juice snacks' and the packaging picture[d] a number of different fruits, potentially

23   suggesting (falsely) that those fruits or their juices are contained in the product" even though the

24   product only contained white grape juice from concentrate.  *Williams*, 552 F.3d at 936, 939.

25   C.      The Disclosure on the Back Label May Serve to Cure the Alleged Misrepresentation on the

26           Front Label

27           Furthermore, because there are no misrepresentations on the Product's front label, the

28   explicit disclosure of the place of manufacture on the Product's back label—Batavia, NY—is fatal

United States District Court
Northern District of California

1    to any alleged label misrepresentation regarding the place of origin.  Mot. at 10.  The Ninth Circuit

2    has held that where "there is no deceptive act to be dispelled," *e.g.*, where the correcting statement

3    on the label "does not contradict other representations or inferences on the packaging" and where

4    "there are no other words, pictures, or diagrams adorning the packaging, as there were in *Williams*,

5    from which *any* inference could be drawn or on which *any* reasonable belief could be based," a

6    reasonable consumer can be expected to look at other parts of the label.  *Ebner*, 838 F.3d at 966

7    (emphases in original).

8              In *Williams*, the Ninth Circuit held that because there were "a number of features of the

9    packaging Gerber used for its Fruit Juice Snacks product which could likely deceive a reasonable

10   consumer" reasonable consumers should not "be expected to look beyond misleading

11   representations on the front of the box to discover the truth from the ingredient list in small print

12   on the side of the box."  *Williams*, 552 F.3d at 939.  In a subsequent case, the Ninth Circuit

13   clarified that "*Williams* stands for the proposition that *if* the defendant commits an act of

14   deception, the presence of fine print revealing the truth is insufficient to dispel that deception."

15   *Ebner*, 838 F.3d at 966 (emphasis in original).  In *Ebner*, the plaintiff alleged that the defendant

16   deceived consumers about the quantity of "lip balm in its Sugar Lip Treatment" product line

17   because "[a]lthough [the lip balm's] label accurately indicates the net weight of included lip

18   product, the tube design uses a screw mechanism that allows only 75% of the product to advance

19   up the tube."  *Id.* at 961.  The Ninth Circuit held that because the label depicts the actual weight,

20   the plaintiff "has not alleged, and cannot allege, facts to state a plausible claim that the [lip balm]

21   label is false, deceptive, or misleading."  *Id.* at 966.

22             As in *Ebner*, there are no words or pictures on the Product's front label on which a

23   reasonable belief could be based that the Product is made entirely in Iceland.  *Ebner*, 838 F.3d at

24   966; *see supra* Part III.B.  Because Icelandic Provisions has not committed an act of deception,

25   "the presence of fine print revealing the truth"—that the Product is manufactured in Batavia,

26   NY—refutes an inference that the Product's label is false, deceptive, or misleading.  *Ebner*, 838

27

28

United States District Court
Northern District of California

F.3d at 966.[3]

The Court **GRANTS** the motion to dismiss Steinberg's California consumer protection statute claims under 12(b)(6).  The Court need not reach the additional issues raised in Icelandic Provision's motion regarding particularity in pleading, statutory standing, Article III standing for injunctive relief, adequacy of CLRA notice, and the adequacy of available legal remedies with respect to these claims.  Because the Court concludes that further amendment would be futile, given the implausibility of her deceptive labeling claims, Steinberg is not given leave to amend.

### IV.        CONCLUSION

For the reasons explained above, the Court **GRANTS** Icelandic Provisions's motion to dismiss Steinberg's Complaint in its entirety with prejudice.

This order disposes of Docket No. 21.  The Clerk of Court is instructed to enter Judgment and close the case.

**IT IS SO ORDERED**.

Dated: January 25, 2022

_____
EDWARD M. CHEN
United States District Judge

---

[3] Steinberg also points to *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) in support of her argument that a reasonable consumer should not be expected to look at the Product's back label.  But *Mantikas* and its line of cases supports the Court's conclusion here.  In *Mantikas*, the Second Circuit adopted the reasoning of the Ninth Circuit in *Williams* when considering a box of Cheez-Its that were labeled as "whole grain."  *Mantikas*, 910 F.3d at 637.  It held that it "cannot conclude that [] disclosures on the side of the box render Plaintiffs' allegations of deception implausible" and instead it concluded that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box."  *Id.* (citing *Williams*, 552 F. 3d at 939–40).

Notably, courts in the Second Circuit have declined to extend *Mantikas*'s holding to situations where the front label "makes no explicit statements" or where the front label makes "ambiguous" statements.  *See, e.g., Wynn v. Topco Assocs., LLC*, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) (distinguishing the label in *Mantikas* because the label at issue made "no explicit claims about the ingredients constituting the flavor," the basis of the alleged misrepresentation); *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, 2021 WL 4502439, at *4 (E.D.N.Y. Sept. 30, 2021) (concluding that the label created "a potential ambiguity" but "the case law permits the Court to resolve ambiguity – as opposed to misleading statements – by reference to the more specific statements on the back of the package," which "put any ambiguity to rest").  In this case, there are no explicit statements on the Product's front label about the place of manufacture, and therefore a reasonable consumer can be expected to consult the back label.